Good morning. May it please the Court, Franklin S. Adler on behalf of Appellant Mr. Khachatourian. I need not inform the Court what the requirements are for a motion for summary judgment. However, I would submit that the Court below engaged in extensive credibility determinations and weighed all inferences against or in favor of the moving party and against the non-moving party. I will attempt to address three primary issues. The Fourth Amendment search of the classroom, the questioning of Mr. Khachatourian, which took place inside the classroom without the benefit of a Miranda reading or a Leibarger reading, and the question of qualified immunity. Now, three undeniable facts permeate this case. The first is that school administrators cannot authorize a criminal search. The second, while Officer Barba and my client were in the classroom, Mr. Sanchez, the school administrator, called the assistant superintendent of the school district, Ms. Scanlon, and let her know through another party that Mr. Khachatourian was going to be arrested, not detained, but arrested. And in light of that, Ms. Scanlon sped from the district office to the high school. The third, somewhat strange, that during the colloquy that happened in the principal's office, a copy of the California Penal Code was brought in at my client's request, and both Ms. Scanlon and Officer Barba read the code section permitting a school employee to bring a firearm onto campus, as long as it was unloaded and in a locked container. Now, this conversation did not take place in a rushed situation. There was time, there were hours, and so the contention of the court below that this conversation, if the court rules in favor of appellant, brings on dire consequences for law enforcement is just ridiculous. Now, the third issue concerns the qualified immunity for Officer Barba. The place to start in this case is the Supreme Court decision of O'Connor v. Ortega, where Ms. Justice O'Connor took pains, pains to place a wall between the two types of permissible searches that may take place, and a criminal search which may not take place. The two which permit such a search are a non-investigatory work-related search, such as someone retrieving a file, no question. The second is a work-related employee misconduct search, which comes close. The grounds cited in the opinion are the inefficiency of the employee, the incompetence of the employee, and mismanagement by the employee. As of November 17, 2008, there were none of these contentions or allegations. The fourth permissible topic under a work-related employee misconduct search is work-related misfeasance, which brings us to school policy. It is the school policy, as I understood, that a firearm or that weapons were not permitted on campus. However, the school policy itself addressed students not bringing weapons on campus, not employees or other such individuals. The reason, I submit, that the policy is incorrect, or the policy was correct at that time, is that the school policy was not correct at that time, was that to say that employees could not bring a firearm on campus as long as it was unloaded and in a locked container is because that would conflict with state law. How would it conflict? The state can prohibit some things. The employer could prohibit more. Because school policy cannot conflict. Where's the conflict? Where's the conflict? Why can't an employer prohibit more than state law does? State law makes it a criminal offense. Why can't the employer say, and beyond that, we make it our policy, no firearms, period? This employer was a government employer. It was a school district. Well, if you go there, there's even more reason not to want guns on campus. I understand the questions that are being asked. I'm addressing a statutory analysis. And I'm asking why it is that the employer can't go beyond the statute. The statute doesn't prohibit a school district from imposing stronger requirements, does it? It does not, Your Honor. Then why is it a conflict? Why can't the school district say the statute makes this criminal? It may not be criminal, but as a matter of school policy, no firearms, end of story. As a matter of school policy, the court could do precisely that. Then there's not a conflict. But the school cannot, or the school or its employee cannot arrest an individual for the possession of a firearm on a school campus as long as it is consistent with Section 626. 6.9. An employee cannot be arrested for violating, arrested, not fired, arrested for possessing a firearm. But here we're talking about looking for it. And why couldn't the employer, the school authorities, look for a firearm which they believe was in contravention of the school district's policy, separate and apart from the possibility there could be criminal implications? The way the Court states the question, the answer, the answer is obvious. It can, in fact. Isn't that relevant to this case? It's not relevant to this case. You were telling us about Justice O'Connor's things you can do. And one of the things you can do is for the employer's policy. Why doesn't this fit that category? Because the search conducted here was not in furtherance of the school policy. It was in furtherance of the application of criminal law. Both Officer Barba, as well as Mr. Sanchez, during their depositions, stated that they believed, which was true, that they were engaged in a criminal search. The first thing Mr. Sanchez did when he heard that my client may possess a firearm on campus was call the school law enforcement arm. He did not call the school administrative arm. And as such, they were conducted. Oh, who was Mr. Sanchez? Pardon me? Who was he? What was his position? I believe he was an assistant principal. He was part of the school administrative arm. I mean, that's it. And who conducted this search? A school, a trained law, a trained and sworn law enforcement officer who worked in the school police, who was a school police officer. Not a resource officer. He was a police officer who was presumed to know the law. And who called him in and who directed his actions? Well, it was Sanchez who called him in. But I submit that Mr. Sanchez did not direct the search. That was done under the aegis of Officer Barba. And it was he who told Mr. Sanchez that Mr. Cacciatorean was going to be arrested. Now, let me state this, please. I have no problem with Mr. Sanchez and Officer Barba on that Monday morning going directly to Room 119, removing the students, and conducting their own search. I submit that this was an exigent circumstance which called for an immediate response, as stated by Mr. Justice Blackmun and both O'Connor as well as TLO. But they did not do that. The law gave them the tools to conduct this immediate search for a threat, a threat posed by a firearm. Instead, what they did was wait. Wait for approximately four hours while children were allegedly threatened in that classroom by the presence of the firearm and did nothing but wait for the dog to arrive. I submit that because it was a criminal search, they needed a search warrant which they could have easily obtained, easily obtained by any of the 500 Superior Court judges in Los Angeles County. So you acknowledge they could have searched right away. Yes. Because they choose to be cautious and get additional information in the form of the dog search, which they knew they could do because the dog was going to be there anyway. By being cautious, they forfeited the ability to do something you acknowledge they could do. This was not a situation that called for caution. It was a situation that called for speed. Because they waited, because they brought the dog to conduct a criminal search, they had to abide by criminal law, which meant search warrant and probable cause. They did not have to. They had neither. It was the threat that permitted immediate response. And so once they learned additional information confirming the threat, they're not allowed to act? There was no additional information confirming the threat. The dog sniff. That was after they were already in the classroom. That was already after the search was being, that was while the search was being conducted. Four hours after, it should have been conducted, which would have given them the opportunity. But that doesn't dissipate the threat that they have the authority to pursue as school officials. Does it? Should the school officials be less worried because they now have the report that the dog sniff had produced a positive reaction? The dog sniff took place inside the classroom. It was at that moment that Officer Barba conducted his manipulation. So you're treating this as an either or. Because it had to be criminal, it could no longer be school policy concern. Why is it either or? I mean, the school no longer should be concerned because there's now a law enforcement interest? There was always a law enforcement interest, Your Honor, because both, as I said, both Barba and Sanchez stated that when the search began, when the conversations began, this was to be a criminal search. And as such, disregarding the exigency, it should have been handled by a search warrant and probable cause. They could have gone in gangbusters. And if they had found the gun, I submit that the plaintiff's case would be on lesser ground. But they did not. They waited. And their waiting brings the case completely within the realm of criminal law. Now do you want to save time for rebuttal? Yes, I do, Your Honor. Thank you. Thank you. Thank you. Good morning, Your Honors. May it please the Court. Hasmik Bedalyan-Collins on behalf of the respondents. This Court should affirm the district court's finding and grant of motion for summary judgment for three main reasons. First of all, the search that was conducted in the classroom was lawful and did not violate the plaintiff's or the petitioner's Fourth Amendment rights. The questioning of the petitioner, either in the classroom or in the principal's office, did not violate his Fifth Amendment rights. And furthermore, the search of the petitioner, incident to arrest, also did not affect his Fourth Amendment rights. Excuse me. Just answer one question for me. What was the basis of the arrest for criminal activities? Was it the knife or was it the gun? It was for three things, Your Honor. First of all, well, at the time that the arrest was decided to be made, it was for the gun and for the knife. The knife that was found in the club room. What was so unlawful about the gun? At that time, Your Honor, Officer Barba felt that possession of the gun was unlawful because, based on his reading of the statute, he determined that the possession was unlawful. However, Your Honor, in addition to that, possession of the knife was also unlawful. And to separate those two things, simply because possession of the gun was later determined to not be sufficient and the petitioner was not held to answer on that, simply the possession of the knife in and of itself was sufficient for a lawful arrest. Therefore, the arrest of the individual was lawful. And furthermore, after the arrest, there was a search of the petitioner's person that took place where an additional knife was found, and that was the third count that was added to his arrest. I'm sorry, I didn't understand. The search of the person produced what? Yet another knife, yes. And that addresses the Fourth Amendment issues as to the search and the arrest of the person. Well, let's just ask a hypothetical question. If he had been arrested solely for the gun, would that have been an unlawful arrest? No, Your Honor, because the courts have held that it's not so much that an officer's ruling on the field is incorrect that makes something an unlawful arrest. Rather, if the facts that were known to him at the time of the arrest were sufficient for probable cause. And in this particular case, there was much discussion between the court, both the prosecution and the defense counsel, whether or not the gun actually met the standards of that penal code. And courts have held, the Ninth Circuit, the Supreme Court have held that we don't expect our police officers to do that sort of mental exercise in the field prior to making that decision. What was it about the gun that raised the question? Whether or not, Your Honor, whether it was loaded or not, whether the container was properly locked or not, and whether that arose to the level of having been a commission of a crime. There was a subsection to that particular gun-free school zone act that allowed for possession and carrying of the gun on the school campus. However, there are far more subsections within that actual statute that deal with whether it's unloaded, what makes it unloaded, what is actually a magazine or a clip, whether it's attached or not. And that was some of the discussion that went on between the court and both prosecution and defense counsel in determining whether or not this should be a court or account that the petitioners held to answer to. And for these reasons, Your Honor, the courts have held that we don't expect our police officers to go through that sort of mental exercise at the time in determining whether or not it was a lawful arrest. The courts look at whether there was probable cause for that particular police officer and for a reasonable officer to believe that a crime had occurred. In this particular case, Your Honor, in addition to the gun, a knife of a blade with seven and three-quarters inches was found in the top drawer of the individual's, one of the counters in that classroom. So in addition to the gun, the knife was found and that the petitioner was held to answer on that particular count. So putting aside the arrest and the search of the person, the search of the classroom was also lawful. For some of the reasons that were discussed during Petitioner's argument, the search of the classroom was, first of all, the fact that the classroom is inhabited by the petitioner does not automatically make it such that he has a reasonable expectation of privacy. The petitioner's entire argument sort of jumps through three or four different steps and talks about reasonableness of the search or the search warrant, the need for a search warrant, and sort of ignores the very important foundational issues that are necessary to establish whether a petitioner actually even has a Fourth Amendment right. In this particular case, it's the respondent's position that the petitioner does not have a reasonable expectation of privacy in either the classroom or the counters that are found in the classroom. This is a classroom that's owned, operated, maintained by the district. It is a classroom that is often searched by these canines. In fact, in this particular case, the defendant himself agreed that dogs had previously searched his room. He knew that, and that can be found on page 158 of the record in his own declaration. You agree with the question? Of course you agree with the question. But the implication of the question that Judge Clifton asked, which is that you could have banned guns from the classrooms if the school district had wanted to do that? Yes, Your Honor. In fact, the school district... No, Your Honor. In fact, there's a board policy, and in fact, the school policy and the school district policy is that weapons are not allowed on campus. I know that the petitioner attempts to say that this is dealing with students only, and this is the distinction. If you do volunteer, you do not allow guns on campus, even if they're unloaded and even if they're locked in a case. That's correct, Your Honor. While it may not be a crime, it would still be a violation of school district policy unless you are a school district officer. And there is board policy on that, and those exceptions do exist. I'm sorry. I misunderstood. I thought the school policy was that you could have a locked gun unloaded if you were not...nobody, including teachers. Nobody could have guns on campus unless it was a school district officer. And so while the California Penal Code may have very specific times and situations where a gun could be on campus, school district policy prohibited it. I obviously would like to make some distinction between that, but the record indicates that that was the policy, and that was one of the undisputed material facts, material fact number 18. It was not disputed that that was, in fact, the school policy. So that the teacher's position is a violation of school policy and regulations. That's correct, Your Honor, which is the exact reason why the school district needed to conduct a search to ensure that employee misconduct, which also happens to be a crime, was not being committed, particularly because it deals with the public safety concerns of its students. Petitioner would like to say... Petitioner says it doesn't apply to teachers, and you say it does apply to teachers. Your Honor, the record does not make any distinction as to students and teachers. I'm not sure exactly where this distinction is coming from, but for sure the excerpts of record, it's devoid of any evidence as to the distinction between who's allowed to have it and who's not. And as I stated, the particular material fact that was brought up is that possession of guns on campus was against school policy. Is this a written policy? It is, Your Honor. It is a board policy. And is the writing itself, as opposed to the conclusion of law or factual findings of the judge, is that in the record? I'm not sure if the policy itself is, Your Honor, but I know that the deduction from that particular statement is in the motion for summary judgment and the admission by the plaintiff. In addition, Your Honor, let's even assume that that's not a written policy, that that's not something that... But this is a district-wide policy, right? That's correct. Not just that high school. And in addition to whether or not it's written, let's assume that there was no policy. If there's still a concern by the school district that a gun exists, they certainly have the rights and responsibilities to the parents of those students to conduct that search. And that's exactly why it was conducted. Before we even get to the discussion about whether it's reasonable or whether a warrant is required, there needs to be an establishment of expectation of privacy. And the respondents submit that Petitioner cannot and does not meet that expectation of privacy, particularly because of the location of where these items were found, the location of the counters. This was in front of the classroom where a teacher would be teaching. The items were found right next to the remote controls to use the TV, the overhead projector, the Elmo, next to a keyboard to be used for a classroom's computer, next to CDs. It's very clear that the evidence in the gun and the knife was not attempted to be held exclusive and private to the particular petitioner. And therefore, for those reasons, Petitioner cannot even establish a privacy right. We don't even get to do we use reasonable suspicion, do we use probable cause, do we need a warrant. So before we can even get to that, he doesn't even establish the expectation of privacy. The other issue that I'd like to address, Your Honor, are the Miranda issues that I anticipate Petitioner may address on his rebuttal. And the Miranda issues are such that the individual had walked into the classroom almost, I mean, completely voluntarily. It was not something that someone had asked him to go. No one had directed him to go. It was almost happenstance that he just happened to walk in. Well, I think the argument is it being summoned to the principal's office. And the number one fact, Your Honor, that I would say undercuts the Petitioner's position that he was in custody at that time is that Petitioner, in fact, at one point walked out of that room, had a conversation, and voluntarily returned back to the principal's office. That fact in and of itself establishes that he thought that his freedom of movement was not restrained. And for those reasons, neither the questioning in the classroom or the principal's office can be something that's custodial or something that's entitled to Miranda rights. One other thing I'd like to address very briefly is the, I expect Petitioner to talk about the idea of the Leiburger warnings. Your Honor, I would state that Petitioner has actually waived his objections or his claims as to these Leiburger warnings because this was never addressed in his opposition to the motions for summary judgment. It was never even pleaded in his complaint. The district court never addressed it, never ruled on it, and it's been brought up for the very first time in his opening brief to this court. So for those reasons, I would hold, I would ask the court to hold that he's waived any rights to bring up these, the Leiburger. If the court has no other questions, Your Honor, I would just ask that this court affirm the district court's ruling on the motion for summary judgment. Is there anything that indicates that he was arrested for the knife as well as for the gun? Yes, Your Honor. In fact, I believe that there is a police report and an arrest report in the record. I can find out what page that is. And additionally, the record, the record of the 1538, the preliminary hearing motion, which is found on page, starting on page 338 of the record, indicates the counts that he's charged with. And if the court would like, I would, I can spend a minute to find out where the report is that indicates. I suppose he could be arrested for one charge and tried another. That's correct, Your Honor. But in this particular case, he was arrested. The initial arrest was initiated for the two charges, the gun and the knife. During the search incident to the arrest, they discovered another knife that was also added on to the police report. And those three are the charges that were presented to the district attorney. And the district attorney filed on those three charges. And obviously, after the preliminary hearing, the charges were reduced down to the two counts referring to the knives only. And if there are no other questions, Your Honor, I would submit. Thank you. Thank you. Thank you, Your Honor. The 5,000 section of which 5137, I'm sorry, 5131.7 is a part is addressed to students. The 4,000 section of the board policy addresses personnel. To respond to the arguments made by counsel, to say that this teacher did not have a reasonable expectation of privacy in the classroom is to say that no teacher has a reasonable expectation of privacy in a classroom. And I believe that is completely wrong. Insofar as my client walking out of the principal's office to speak to his union representative who came and then walked back in states that he did not feel or that he felt he could leave at any time, I respectfully suggest is preposterous. Officer Barba was hovering around that location, the principal's office, the whole time. Had my client walked away, indeed had he walked away while in the classroom, he very likely would have suffered severe physical distress. When a police officer braces a person in the interest or in his professional capacity as by asking, do you have anything you shouldn't have in this room, and what's in the box, he is not free to walk away. Those are incriminating questions which should have been preceded by a Miranda warning. People can be questioned without being in custody. I beg your pardon, Your Honor? People can be questioned without being in custody. Oh, of course they can, Your Honor. But while once the conversation engaged in between my client who entered his classroom, now he didn't own the classroom, but that was the classroom which was assigned to him, and sees acquaintances and he's talking to them in normal conversation, that's fine. That's fine. He could walk away, he could walk out. But once Officer Barba, who had been his acquaintance, was an acquaintance who just happened to be a police officer, once he asked the question, do you have anything you shouldn't have in here, my client in his declaration stated, I became the subject of the police investigation, and I did not feel I was free to walk away. And that feeling of being unable to just leave on his own continued from the classroom during the perp walk to the principal's office, while in the principal's office, and while around the principal's office. Had he just walked away, he would have been chased and subdued. Can I go back to the point about the policy, because I'm a little unclear about the state of the record here? Yes, Your Honor. First of all, was the written policy itself part of the record below? I believe it was. I cannot say for sure. Was the argument you're making here that the policy only applies to students, the policy against guns generally, whether locked or unlocked, was that argument made below? I believe it was made in my reply brief, yes. Below. We never had the opportunity to argue to the court, Your Honor. I believe the brief of appellant during the motion for summary judgment addressed that, but I will not swear to it. I will not swear to it. Let me. Thank you.  Because it's on the table. I did take a look at the statement of uncontroverted facts and your client's response. And your client's response, we should start with the moving party's fact statement, was possession of any weapon on the La Puente high school campus is prohibited by district policy. They cite some supporting evidence. The response is possession of a firearm on a school campus is permitted by the statutory section as long as the firearm is unloaded and in a locked container, which it was in this case. In the event of a conflict between California statutory law and a school district policy, California statutory law prevails. I understood that to be the argument you presented to the district court. I don't recall having seen a reference previously to the notion that the policy did not apply to teachers.  I cannot answer that question, Your Honor. Truthfully, I cannot answer that question. However, to revert to the questions you asked earlier, the violation of school policy, whether rightfully or wrongfully applied, can result in termination of the employee. He cannot be arrested for a violation of school policy. And the search, what we have here from the appellees is a fig leaf of a workplace search wagging, I should say, the tail of a workplace search wagging the criminal dog. They thought it was criminal. We believe it was criminal.  Which brings me to Officer Barba. One second before. Do you agree that he could be arrested for possession of a knife? I do not agree with that, Your Honor, because the code section 626.10 addresses knives on school campuses. And there are exceptions which fit precisely the testimony, the statements made by my client. At the time, he was both in the classroom as well as in the principal's office. One of the knives, one of the knives, the one with the 7 1⁄2-inch blade, he testified, or he stated, was used for cutting pizza, which he served to school. But a reasonable police officer wouldn't have to accept that as true. Well, of course he wouldn't have to accept that as true. But before that statement was made, my client should have been Mirandized because he felt he was not free to leave and he was being asked incriminating questions, the answers to which, at least insofar as what's in the box, was clearly known to Officer Barba. He knew there was a gun in the box. He asked the question. If my client denied it, he would have thought my client was lying. If he admitted it, as he did, he was confessing to a crime, as far as Officer Barba thought, which should have been dispelled when Officer Barba read 626.9C2 in the office, but he refused to enforce it or follow it because it was that little thing at the end of the section. Just one more point, Your Honor. No, Your Honor, I have nothing further to offer the Court. If there are any questions, I will be happy to respond. Oh, I beg your pardon. There was one additional point, one additional point. But make it brief. Yes, I will. In the ruling of the Court, in the order of the Court, the Court stated that because Mr. Khachaturian was not in custody in the classroom, he did not have a right to remain silent. I was struck by this sentence because I believe that, at least in America, everyone has the right to remain silent as long as they are willing to face the consequences. And once, in fact, my client did remain silent, after having been advised of his rights by Officer Barba, Officer Barba arrested him because my client wouldn't tell Barba his side of the story. I thank you very much. Thank you, counsel. The case just argued will be submitted.
judges: Rakoff, Reinhardt, Clifton